UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| COASTAL BEND ENTERPRISES LLC; dba BIG HOUSE BURGERS AND BIG HOUSE BAR BQ, § § § § Plaintiffs, § VS. § EVANSTON INSURANCE COMPANY, § *et al*, § § Defendants. § | CIVIL ACTION NO. 2:17-CV-322 |

## ORDER GRANTING MOTION TO REMAND

Plaintiff Coastal Bend Enterprises, LLC d/b/a Big House Burgers and Big House Bar BQ (Big House) filed this action in the 105th Judicial District Court of Kleberg County, Texas. Big House asserts causes of action against Evanston Insurance Co. (Evanston) for breach of contract, Texas Insurance Code violations, and common law bad faith with respect to the failure to pay Big House's claim for storm, wind, and hail damage in full. Big House also sues the company Evanston hired to adjust the claim, Brush Country Claims, Ltd (Brush), and its investigator, Michael Cox (Cox), alleging causes of action under the Texas Insurance Code arising from a failure to properly investigate the claim and verify the covered losses. *See* D.E. 1-2.

On October 13, 2017, Evanston timely removed the case to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. D.E. 1. It is undisputed that the amount in controversy requirement is satisfied. While Big House has named two non-diverse Defendants, Brush and Cox, Evanston argues that they are improperly joined. Before the

Court is Big House's motion to remand (D.E. 5), arguing that its claims against Brush and Cox are supported by both legal authority and sufficiently pled factual allegations. Also before the Court are Evanston's response (D.E. 6) and Big House's First Amended Complaint (D.E. 12), filed with leave of Court (D.E. 11).  For the reasons set out below, the Court GRANTS the motion and remands this action to state court.

## DISCUSSION

### A. Standard of Review

On a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id*. The strict construction rule arises because of "significant federalism concerns."  *See generally, Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

"The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Illinois Cent. R.R. Co*., 385 F.3d 568, 574 (5th Cir. 2004) (en banc).  The removing party proves improper joinder by demonstrating: (1) actual fraud in the pleading of jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court.  *See Crockett v. R.J. Reynolds Tobacco Co*., 436 F.3d 529, 532 (5th Cir. 2006) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)); *see also Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).  Only the second method is at issue here.

Thus the motion to remand must be granted unless "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). In other words, "the existence of even a single valid cause of action against the in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Grey v. Beverly Enterprises–Mississippi, Inc.*, 390 F.3d 400, 412 & n. 11 (5th Cir. 2004) (and cases cited therein). To determine whether a plaintiff has a "reasonable basis for recovery under state law, the court may "conduct a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573; *Anderson v. Georgia Gulf Lake Charles*, 342 Fed. Appx. 911, 915 (5th Cir. 2009).

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Rule 8(e). The requirement that the pleader show that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Those factual allegations must then be taken as true, even if doubtful. *Id*. In other words, the pleader must make

allegations that take the claim from conclusory to factual and beyond possible to plausible.  *Id*., 550 U.S. at 557.  The *Twombly* court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."  556 U.S. at 681.

### B. Claim Against Brush and Cox

#### 1. Big House Has Factually Asserted Claims Against Brush and Cox

It is undisputed that Big House made a timely windstorm or hail damage claim against the Evanston insurance policy, asserting exterior and interior damage to the structure and equipment on its property.  Evanston retained Brush Country Claims, which assigned Cox to investigate and adjust the claim.  On the basis of Cox's representations, Evanston offered substantially less than the amount of covered damages.  D.E. 12, ¶ 22-23, 26.

Big House contends that its structure sustained obvious damage, including damage to the roof resulting in water leaks.  It further suffered damage to its electronic hardware and software, resulting in a loss of sales data and functionality associated with an

apparent electrical surge during the storm. D.E. 12, ¶ 53. Cox either did not actually conduct an investigation or did so inadequately if he did not detect and report the roof damage, leak issues, and equipment damage and incapacity. Big House also alleges that Cox knowingly or recklessly made false representations, telling Big House that it would have to make two separate claims and incur two deductibles before it could recover on the entire claim and that the amount of the loss was not worth pursuing. D.E. 12, ¶¶ 54-57.

Under the Texas Insurance Code's requirement of liberal construction[1] and in the express language of its pleading, Big House invokes Texas Insurance Code § 541.060, which prohibits misrepresenting to a claimant a material fact or policy provision relating to coverage at issue and failing to attempt in good faith to effectuate a prompt and fair settlement. § 541.060(a)(1), (2).[2] D.E. 12, ¶ 46. Such claims may generally be made against an adjuster because adjusters are included in the definition of "persons" engaged in the business of insurance for purposes of violation of the Texas Insurance Code. Tex. Ins. Code § 541.002(2). *See also, Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 282 (5th Cir. 2007); *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1988).

It is axiomatic that whether the insured suffered a covered loss, must make more than one claim and pay more than one deductible, and the amount of recoverable

---

[1] The code is to be construed liberally to effectuate its purpose of prohibiting unfair or deceptive acts or practices in the business of insurance. Tex. Ins. Code §§ 541.001, 541.008.

[2] Big House pleads other violations of the Texas Insurance Code and other causes of action against Cox. However, because it need only demonstrate one viable claim to prevail on its motion to remand, the Court need not, and does not, address the viability of the other claims.

damages are material facts related to coverage of a claim. Therefore, claims regarding failure to properly inspect the property and failure to properly report the damages have been held to serve as appropriate factual allegations to support claims for Insurance Code violations against independent adjusters. *See, Centaurus Inglewood, LP v. Lexington Ins. Co.*, 771 F. Supp. 2d 667, 671-72 (S.D. Tex. 2011). This holds true here under the facts alleged. Big House has further alleged factual details to support claims that Cox intentionally disregarded information Big House provided regarding the losses it suffered, interfering in the effectuation of a prompt and fair settlement.

While Evanston appropriately challenged Big House's initial pleading for failure to allege sufficient facts, the Court holds that its first amended complaint (D.E. 12) has cured those objections. The Court now considers Evanston's arguments that the claims are not legally viable. Evanston challenges the pleading as: (a) failing to allege a misrepresentation regarding the policy rather than the facts giving rise to a claim for coverage, (b) asserting claims that cannot be made against an adjuster, and (c) asserting claims for extra-contractual damages with no injuries independent of policy proceeds.

### a. Policy Misrepresentations

Evanston argues that a violation of Texas Insurance Code § 541.060(a)(1) must involve a misrepresentation about the details of a policy rather than the facts giving rise to a claim for coverage, citing *One Way Invs., Inc. v. Century Sur. Co.*, No. 3:14-CV-2839, 2014 WL 6991277, at *4 (N.D. Tex. Dec. 11, 2014) (Fitzwater, J.) (quoting *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014) (Solis, J.)). In its amended complaint, Big House does allege that Cox misrepresented the

policy by stating that Big House had to make two separate claims and incur two deductibles regarding losses from a single event. Thus, without deciding whether an actionable misrepresentation is indeed limited to policy details, the Court holds that the allegations fall within that narrow interpretation of § 541.060(a)(1).

### b. Insurance Code § 541.060(a)(1) and (2) Apply to Adjusters

Evanston argues that the insurance code prohibitions only apply to insurance carriers and not to adjusters. This argument is based upon case law that has developed in the United States District Court for the Northern District of Texas, represented here by: *Meritt Buffalo Events Ctr., LLC v. Cent. Mut. Ins. Co.*, No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016), and *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014). Those cases state that § 541.060(a) claims cannot be asserted against adjusters. This Court declines to follow these cases.

The cited cases relied on *United States Fire Ins. Co. v. Confederate Air Force*, 16 F.3d 88, 91 (5th Cir. 1994), and the cases upon which it relied. *Confederate Air Force* did not involve an adjuster's misrepresentation about material facts related to whether there was a loss that was covered. Neither did the two cases it cited: *Parkins v. Texas Farmers Ins. Co.*, 645 S.W.2d 775, 776–77 (Tex. 1983) and *Employers Casualty Co. v. Fambro*, 694 S.W.2d 449, 452 (Tex. App.—Eastland 1985, writ ref'd n.r.e.). Rather, all three cases were about whether the carrier or sales agent misrepresented policy limits, coverage, or other policy terms. The Fifth Circuit carefully defined the issue:

> In order to find misrepresentation *in the instant case*, the jury would have had to find either that U.S. Fire represented that CAF would receive a particular kind of policy that it did not

> receive or that it denied coverage against loss under specific circumstances that it previously had represented would be covered.

*Confederate Air Force*, 16 F.3d at 91 (emphasis added). The issue decided did not purport to determine the entire contour of Insurance Code § 541.060(a)(1) or the potential liability of adjusters.

Thus, nothing about the issue decided in *Confederate Air Force* or in the cases it relied on limits Insurance Code claims so as to exclude liability for misrepresenting a material fact regarding the existence of a loss covered by the policy. The wholesale elimination of a § 541.060(a)(1) claim against the adjuster is contrary to the plain language of the statute and the statutory directive to construe its terms liberally to prohibit unfair or deceptive insurance practices—of which the false denial of a covered loss is one. Texas Insurance Code § 541.060(a)(1) applies to an adjuster who misrepresents a material fact related to the coverage of a claim, such as the factual denial that the insured suffered a loss or that more than one claim would be required for a single event.

More specifically with respect to claims under § 541.060(a)(2), there is no clear consensus on this issue among federal courts. *See Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 950 (S.D. Tex. 2016) (noting conflict in case law while rejecting § 541.060(a)(2) claim against adjuster). There is a split among trial courts and the parties have cited no decision from the Fifth Circuit or Supreme Court of Texas to resolve the disagreement and this Court has found none.

Indeed, one recent Northern District of Texas opinion holds not only that the statutory language encompasses the role of an adjuster, but that any conflict among the courts on this issue must be resolved in favor of remand under the standard of review and burden of proof. *Roach v. Allstate Vehicle and Property Ins. Co.*, No. 3:15-CV-3228-G, 2016 WL 795967, *5-6 (N.D. Tex. February 29, 2016) (holding that an adjuster can "effectuate" the settlement of a claim under (a)(2) even if he cannot finalize that settlement) (citing *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (holding that "any ambiguities of state law must be resolved" in favor of remand)); *Mary v. Allstate Texas Lloyd's*, No. 3:16-CV-3383-L-BN, 2017 WL 6462009, at *2 (N.D. Tex. Dec. 19, 2017) (same; collecting cases).

Despite its burden of proof to demonstrate that there is no possibility of a viable claim against Cox and Brush, Evanston does not attempt to resolve the conflict in the cases but rather cites only to the opinions that reject the claims against adjusters. The Court declines to read the provisions of § 541.060(a)(1) and (2) as applying only to insurance companies and not to adjusters. The Court resolves any ambiguities in the law in favor of remand pursuant to the applicable standard of review.

    **c. Claim for Extra-Contractual Damages**

Evanston challenges the viability of Big House's statutory claims on the basis that it has not pled extra-contractual damages and thus has no corresponding compensable injury. Evanston relies upon *Parkans Int'l. L.L.C. v. Zurich Ins.*, 299 F.3d 514, 519 (5th Cir. 2002), *Provident American Ins. Co. v. Casteneda*, 988 S.W.2d 189 (Tex. 1998), and *DaimlerChrysler Ins. Co. v. Apple*, 265 S.W.3d 52, 70 (Tex. App. – Houston [1st Dist.]

2008), *aff'd in part and rev'd on other grounds sub nom. Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248 (Tex. 2009). Those cases do not support Evanston's argument. Big House's statutory claims are fully supported by its allegations of contractual damages.

*Parkans* was a summary judgment case in which the Fifth Circuit determined that the claimed loss was not covered by the policy. Thus the insurance company properly denied the claim. Citing *Castaneda*, the circuit court held—in the absence of any viable claim on the contract—"There can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." *Parkans*, 299 F.3d at 519. Here, Evanston has not eliminated the contract claim and the contractual damages. Thus, the premise upon which the *Parkans* opinion rests for holding that extra-contractual damages were necessary to sustain a statutory claim for Insurance Code violations does not apply here. *See generally*, Tex. Ins. Code § 541.152 (damages for private actions for Insurance Code violations includes contract damages).

The same is true of *Castaneda* and *Chrysler*. In *Castaneda*, the insurance company's articulated basis of the decision to reject the claim may not have been appropriate in the final analysis. However, the Supreme Court of Texas found that the insurance carrier—at all times—reasonably questioned whether the claim was covered. And the court held that the policy, in fact, did not afford the coverage claimed. Yet the insured persisted in claiming that failure to promptly respond to post-denial efforts to

reverse the coverage decision demonstrated a mishandling of the claim in violation of statutory regulation of insurance companies.

The court wrote, "'We do not exclude, however, the possibility that in denying the claim, the insurer may . . . cause injury independent of the policy claim.'" *Castaneda*, 988 S.W.2d at 198 (quoting *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). There was no evidence of an independent injury in *Castaneda*. The bad faith claim was defeated because there was no viable claim to policy benefits and no extra-contractual injury. That does not mean that, when the policy claim is viable, contractual damages cannot support a statutory claim.

The *Chrysler* case involved a defamation claim against the corporation. The corporation sought insurance coverage for the claim, but the policy contained an exclusion for defamation uttered with knowledge of its falsity. The battle centered on whether the insured—as defined by the policy—had knowledge. The policy described the insured as the corporation and its officers, directors, and shareholders (not vice-principals). An arbitrator had found that the employees who had knowledge were vice-principals of the corporation. The intermediate appellate court held that the policy exclusion did not apply to the knowing conduct of the vice-principals. Therefore, the insured corporation was able to recover on the policy claim. Consequently, the corporation could not recover on its extra-contractual claim because the only damages demonstrated were the contract damages already recovered under the contract theory. *Chrysler*, 265 S.W.3d at 69-70. The Supreme Court of Texas did not agree with the intermediate court's resolution of the contract issue. *Chrysler Ins. Co. v. Greenspoint*

*Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009). It held that the knowledge of vice-principals was imputed to the corporation, such that the policy exclusion applied, eliminating the contract claim. Because the claim was properly denied, there was no liability on which to predicate an extra-contractual recovery. *Id*.

The *Chrysler* cases do not eliminate the issue here, where Big House seeks contract damages (which have not yet been recovered under any other theory) under its statutory claim. Big House's claim against Cox and Brush is a statutory claim, which can be supported by its loss of insurance policy proceeds (contractual damages), even in the absence of extra-contractual damages. Evanston has not provided any case law to the contrary.

## CONCLUSION

For the reasons set out above, the Court holds that Evanston has not satisfied its heavy burden to demonstrate that no viable claim has been stated against non-diverse Defendants Cox and Brush. Without diversity of citizenship, this Court does not have jurisdiction over the state law claims made in this action. Consequently, Plaintiff Big House's motion to remand is GRANTED and this action is remanded to the 105th Judicial District Court of Kleberg County, Texas, the court from which it was removed.

ORDERED this 18th day of January, 2018.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE